United States District Court
Southern District of Texas
**ENTERED**
March 10, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMANDA MICHELLE HODGES STANLEY, § § § | |
| Plaintiff. § | |
| § | CIVIL ACTION NO. 4:22-cv-00527 |
| V. § § | |
| COMMISSIONER OF SOCIAL SECURITY, § § § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Amanda Michelle Hodges Stanley ("Stanley") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Stanley and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 13–14. After reviewing the briefing, the record, and the applicable law, Stanley's motion for summary judgment (*see* Dkt. 13) is **DENIED**, and the Commissioner's motion for summary judgment (*see* Dkt. 14) is **GRANTED**.

## BACKGROUND

On October 23, 2020, Stanley filed an application for Title II disability and disability insurance benefits alleging disability beginning August 1, 2019.[1] Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Stanley was not disabled. Stanley filed an appeal with the Appeals Council. The Appeals Council

---

[1] During her hearing before the ALJ, Stanley amended her alleged onset date from August 1, 2019 to October 15, 2019.

denied review on December 20, 2021, making the ALJ's decision final and ripe for judicial review. Stanley timely filed this appeal on February 14, 2022.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Stanley had not engaged in substantial gainful activity since October 15, 2019. *See* Dkt. 7-3 at 11.

The ALJ found at Step 2 that Stanley suffered from "the following severe impairments: [a]ttention deficit disorder; generalized anxiety disorder/panic disorder; depressive disorder/mood disorder; bipolar disorder; post-traumatic stress disorder; obesity; undifferentiated connective tissue disease; systemic lupus erythematosus; osteoarthritis involving multiple joints; lumbar disc disease with radiculopathy." *Id.* at 12.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.*

Prior to consideration of Step 4, the ALJ determined Stanley's RFC as follows:

> [T]he claimant has the residual functional capacity to lift or carry no more than 10 pounds occasionally and less than 10 pounds frequently, stand or walk for 2 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, but [s]he can never climb ladders, ropes or scaffolds. The claimant can frequently balance and stoop, but she can only occasionally kneel, crouch and crawl. The claimant can frequently but not constantly push, pull, handle and finger objects with the bilateral hands. The claimant can never work at unprotected heights or around dangerous moving machinery. The

claimant can never operate heavy equipment or drive a motor vehicle for commercial purposes. The claimant must avoid all exposure to open flames and open bodies of water. The claimant can tolerate a moderate level of noise such as noise found in a department or grocery store. The claimant can tolerate normal office lighting but must avoid all exposure to bright lights, high beams, flashing lights and working outside in the direct sunlight. The claimant must avoid all exposure to extreme temperatures, both heat and cold. The claimant can understand, remember and carryout simple instructions in a work environment free of fast-paced production requirements. The claimant can make decisions on simple work-related issues and adapt to and manage frequent but not constant changes in the work setting. The claimant can have occasional interaction with supervisors, co-workers and the general public.

*Id.* at 17.

At Step 4, the ALJ found that "[Stanley] is unable to perform any past relevant work." *Id.* at 22.

At Step 5, relying on the Medical-Vocational Guidelines, the ALJ found that Stanley is not disabled because "there are jobs that exist in significant numbers in the national economy that [Stanley] can perform." *Id.*

## DISCUSSION

This social security appeal raises only one issue: whether the ALJ properly considered the medical opinion evidence in formulating Stanley's RFC.

Stanley argues that "[r]emand is required because the ALJ . . . relied solely on the interpretation of raw medical evidence in the record to craft his [physical] RFC determination." Dkt. 13-1 at 13–14. Stanley contends that under Fifth Circuit precedent, "an ALJ 'may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Id.* at 14 (citing *Fleming v. Saul*, No. SA-19-CV-00701, 2020 WL 4601669, at *4 (W.D. Tex. Aug. 10, 2020) (citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995))). This is a true statement of law, but it does not accurately describe this case, because the ALJ *did* consider medical opinions regarding Stanley's physical limitations. It is interesting to me that Stanley cites

*Fleming* for this proposition, because the facts and arguments in *Fleming* are quite similar to the facts here. Just like Stanley, the plaintiff in *Fleming*, relying on *Ripley*, argued "that substantial evidence does not support the ALJ's RFC determination because there is no medical opinion in the record consistent with the ALJ's findings." *Fleming*, 2020 WL 4601669, at *4. And just like the Commissioner does here, the Commissioner in *Fleming* responded "that the ALJ properly interpreted the medical opinions of record in accordance with a new Social Security regulation, 20 C.F.R. § 404.1520c, governing claims filed on or after March 27, 2017." *Id*. The Court in *Fleming* found no reversible error, and that substantial evidence supported the Commissioner's decision. *See id*. at *9. I shall do the same.

Because Stanley filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id*. § 404.1520c(b)(2).

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's

5

persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

As in *Fleming*, the ALJ here "applied the new Section 404.1520c and discussed each of the medical opinions in the record." *Fleming*, 2020 WL 4601669, at *5. Specifically, the ALJ considered the medical opinions of the State Agency Medical Consultants ("SAMCs") from the initial and reconsideration levels of disability determination and found them "inconsistent with subsequently added medical evidence and the record as a whole." Dkt. 7-3 at 21–22. Importantly, the ALJ rejected the SAMCs' opinions in favor of "a *greater* degree of functional limitation." *Id.* at 21 (emphasis added). As in *Fleming*, the fact "[t]hat these medical experts found Plaintiff to be capable of a [higher level of work] . . . is ultimately supportive of the ALJ's RFC determination." *Fleming*, 2020 WL 4601669, at *9.

The cases Stanley invokes are inapposite. To start, most of the cases that Stanley cites predate the revised regulations. But even Stanley's best, more recent case, is unavailing. In *Ramirez v. Saul*, No. 4:18-cv-2504, 2020 WL 1853749 (S.D. Tex. Apr. 12, 2020), United States Magistrate Judge Dena Palermo found the ALJ's RFC not supported by substantial evidence because the ALJ "failed to discuss any medical evidence he *did* accept in formulating Plaintiff's RFC." *Id.* at *4. This is markedly different from the instant decision. Here, the ALJ discussed all of the medical evidence regarding Stanley's physical complaints, including that the SAMCs found that Stanley could perform medium exertional level work. The ALJ reviewed the medical evidence of record and determined that Stanley is actually *more* limited than those opinions suggest. The court in *Fleming* said it best:

> [T]his is not a case in which there are no medical opinions of record, and the ALJ independently analyzed the raw medical data without any guidance from medical professionals. Nor is this a case in which the ALJ truly rejected all of the medical opinions of record and fashioned

6

> a completely distinctive RFC. Experienced ALJs can draw their own conclusions as to disability status based on accurate medical information. What Plaintiff characterizes as the ALJ substituting his opinion in this case is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.

*Fleming*, 2020 WL 4601669, at *9 (cleaned up). I see no reversible error, and I find that substantial evidence supports the ALJ's RFC determination.

Finally, Stanley argues that it was prejudicial error for the ALJ not to order a consultative examination. The decision to order a consultative examination is, for the most part, discretionary. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). An ALJ is only required to order "a consultative examination at government expense [if] the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id.* (quotation omitted). In support of her claim that the ALJ should have ordered a consultative examination, Stanley cites *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399 (5th Cir. June 8, 2022). The facts of *Hardine* are a far cry from this case. In *Hardine*, the ALJ's own decision noted a lack of clarity in the medical opinion evidence, and there were obvious "gaps in the record." *Id.* at *2. Stanley contends that, like in *Hardine*, "there is a gap in the record regarding Plaintiff's back impairment, and a consultative examination would have resolved this." Dkt. 13-1 at 18. Stanley bases this argument on an August 2021 appointment at which Stanley's physician scheduled her for an "L3-S1 discectomy." *Id.* Stanley claims that "no post-surgical follow-ups were requested, showing gaps in the record." *Id.* There is one glaring problem with this argument: Stanley's hearing before the ALJ was on September 22, 2021, which is *after* the August 2021 appointment. Stanley does not say whether the surgery occurred before the hearing, and the transcript shows that Stanley did not mention this surgery to the ALJ. *See* Dkt. 7-3 at 40–63. If the surgery occurred before the hearing, it was *Stanley's* responsibility to ask the

7

ALJ to consider Stanley's surgical records and post-surgical evidence.[2] *See* 20 C.F.R. § 404.1512 ("You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (*see* § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). If the surgery occurred after the hearing, then *Stanley* should have sent new evidence to the Appeals Council following receipt of the ALJ's unfavorable decision. *See id.* ("This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision."); *see also* Dkt. 7-3 at 7 (The ALJ notified Stanley to "send . . . any new evidence **with your appeal**" to the Appeals Council.). Accordingly, there was not a gap in the record for which the ALJ should have ordered a consultative examination.

Even if Stanley had shown that a consultative medical examination was necessary, she would have to demonstrate that the ALJ's failure to order one prejudiced her. In the Fifth Circuit, prejudice is established when a plaintiff shows that a consultative medical examination "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted). Stanley does not meet her burden of showing prejudice, as she does not offer any argument or evidence that demonstrates "how additional consultative examinations would have led to a more favorable decision." *Williams v. Berryhill*, No. 3:18-cv-1913, 2019 WL 4393635, at *13 (N.D. Tex. Sept. 13, 2019).

---

[2] At the hearing, Stanley's counsel did state that he was "waiting on additional evidence," specifically, "records from four different providers." Dkt. 7-3 at 41. But Stanley does not argue that these records were not received and considered. Rather, the ALJ's decision shows that he considered four additional records beyond those received into evidence at the hearing. *Compare id.* (admitting Exhibits 1A through 10F into evidence), *with id.* at 9 (admitting 11 through 14F as well).

## CONCLUSION

For the reasons provided above, Stanley's motion for summary judgment (*see* Dkt. 13) is **DENIED**, and the Commissioner's motion for summary judgment (*see* Dkt. 14) is **GRANTED**.

SIGNED this 10th day of March 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE